**FOSTER GRAHAM MILSTEIN & CALISHER, LLP**
Daniel K. Calisher (State Bar No. 181821)
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: calisher@fostergraham.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RACHEL SIESS, as trustee of the LINDEN C. SIESS IRREVOCABLE TRUST DATED DECEMBER 20, 2007, <br><br> Plaintiff, <br><br> v. <br><br> CITIBANK, N.A., a national banking association; and ACORNS GROW INCORPORATED, a Delaware corporation. <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> Division: <br> Courtroom: |

COMPLAINT

Plaintiff Rachel Siess, as trustee of The Linden C. Siess Irrevocable Trust dated December 20, 2007 ("Plaintiff" or "Siess"), by and through her undersigned counsel, submits this Complaint as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Siess is a Colorado citizen and the Trustee of the Linden C. Siess Irrevocable Trust dated December 20, 2007, a Trust organized under the laws of the State of California.

2. Defendant Citibank, N.A. ("Citibank") is a national banking association with a principal business address of 388 Greenwich Street, New York, New York, 10013. Upon information and belief, Citibank, N.A. is a subsidiary of Citicorp, a Delaware corporation whose principal place of business is in New York, New York. Upon further information and belief, Citibank is an FDIC-supervised and insured institution.

3. Defendant Acorns Grow Incorporated ("Acorns") is a Delaware corporation with a principal business address of 5300 California Avenue, Irvine, California, 92617. Acorns markets itself as a financial technology and financial services company where customers can set up individual investment accounts, link bank accounts or crypto accounts, and use funds to invest in securities and other investment vehicles.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interests and costs.

5. This Court has personal jurisdiction over the Defendants because they are authorized to do business in California, maintain continuous and systemic contacts with California and this District, do business in California and this District specifically related to the claims alleged in this Complaint, and have sufficient minimum contacts with California so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in or were directed to this District, the property that is the subject of this action is situated in this District, and the Defendants may be deemed to reside in California because: (1) Citibank maintains continuous and systemic contacts with California and this District to be subject to the Court's personal jurisdiction, and (2) Acorns maintains its principal place of business in this District.

## GENERAL ALLEGATIONS

7. The Linden C. Siess Irrevocable Trust ("Trust") was established in 2007 for the benefit of Linden Siess, a minor who is the son of Plaintiff. At the time it was created, Plaintiff and two other individuals were appointed as the initial trustees.

8. The Trust opened a trust checking bank account at Citibank. The Trust's funds were held in that Citibank bank account, to be held for the benefit of Linden C. Siess, the protected minor (the "Trust Account"). Upon information and belief, a copy of the Trust Agreement was provided to Citibank, thereby putting Citibank on notice of the fiduciary and protected status of the account.

9. On approximately December 31, 2018, Siess was appointed as the successor trustee for the Trust, effective February 19, 2019.

10. From and after February 19, 2019, Siess was the only Trustee for the Trust, and should have been the only individual authorized to transact business in the Trust Account. Siess was not aware of any other person having authority to execute transactions on the Trust Account.

11. On May 21, 2024, Citibank sent a letter to Siess that the Trust Account had been overdrawn. Siess immediately called Citibank to inquire as to what happened to the funds held in the Trust.

12. In that telephone conversation, a Citibank representative told Siess that they could see that the transactions had been fraudulent. Siess was transferred to a

representative in Citibank's fraud department, who stated that the Trust Account showed approximately 99 fraudulent transactions totaling over $300,000 going back to October 2023.

13. Siess informed Citibank that she was not personally aware of any of these transactions, and had not authorized any of them.

14. Siess was informed that the matter would be investigated. Thereafter, Siess was unable to access the Trust Account.

15. In the weeks that followed, Siess received notification from Citibank that certain amounts were being deposited into her personal account: $6,000 for transactions on March 25, 2024; (2) $50,009.00 for transactions between April 1, 2024 and April 19, 2024; (3) $48,509.00 for transactions between April 22, 2024 and May 20, 2024; and (4) $9,351.78 for transactions between October 6, 2023 and January 2, 2024—a total credit amount of $113,869.78.

16. These credited funds were deposited into Siess's personal checking account directly—they were not returned to the Trust Account from which they were stolen.

17. Although Citibank had already issued credits for transactions back to October 6, 2023, Citibank denied any further credit for the remaining $203,930.26 in fraudulent transactions that occurred between December 4, 2023, and March 19, 2024. According to Citibank, these particular transactions "were not reported within the required timeframe as described in [the] account terms and conditions."

18. Siess, both directly and through counsel, further demanded that Citibank disclose its investigation file and information received as part of its investigation. Citibank only responded by sending Siess copies of the bank statements for the Trust Account.

19. In the span of twelve months prior to September 2023, the Trust Account statements demonstrate only five total debits from the Trust Account, all

1  via a physical check signed by Siess—the account otherwise remained dormant and
2  gaining interest.

3      20.    To Siess's knowledge, there were no electronically linked accounts to
4  the Trust Account, and it was her practice only to pay amounts from the account via
5  physical check.

6      21.    On September 15, 2023, three transactions titled "PAYPAL
7  ACCTVERIFY" appear in the Trust Account's statements—two deposits of $0.06
8  and $0.09 respectively, and a subsequent withdrawal of $0.15. These entries do not
9  reflect ordinary activity, and Siess likewise did not authorize these transactions.
10 Citibank did not alert Siess to this unusual activity in the Trust Account.

11     22.    Beginning October 6, 2023, statements for the Trust Account revealed
12 a pattern of withdrawals, each titled "Acorns Transfer," "Acorns Invest Transfer,"
13 or "Subscription Acorns."

14     23.    The statements reflect nine withdrawals in October 2023—more
15 withdrawals than had occurred in the entire previous year—and they continued at a
16 similar rate for several months. Citibank did not alert Plaintiff to this unusual
17 pattern of activity in the Trust Account.

18     24.    The withdrawals routinely consisted of $1,000, $2,000, $5,000, and
19 $7,000 at a time, as well as what appears to be a $9 monthly subscription fee.

20     25.    The withdrawals continued until May 20, 2024, at which point the
21 Trust Account had been completely emptied and was, in fact, overdrawn.

22     26.    Upon information and belief, all of these transactions were to an
23 account maintained by Defendant Acorns in the name of or controlled by an
24 individual using the name "Charles Treadway."

25     27.    Siess does not know any individual named Charles Treadway, and no
26 such name has ever been associated with the Trust Account.

27     28.    Upon information and belief, both Acorns and Citibank know certain
28 personal identifying information for Charles Treadway, including but not limited to

email address(es), account numbers, and other information that could identify Mr. Treadway.

29. Acorns and Citibank both refuse to disclose this information to Siess.

30. Citibank did not notify Plaintiff of these suspicious transfers—extracting thousands of dollars from the Trust Account, often multiple times in the same day—at any point over the period from October 2023 to May 2024. Plaintiff was only notified when the Trust Account was ultimately overdrawn.

31. Upon information and belief, neither Citibank nor Acorns initiated any criminal investigation at any time, or took any further efforts to determine the perpetrator of the fraud or to recover the $203,930.26 that was stolen from the Trust Account.

32. Upon information and belief, to the extent Citibank granted access to the Trust Account to any person other than Siess, Citibank had a duty to comply with Know Your Customer requirements, California consumer law, as well as California law governing trusts.

33. Upon information and belief, Acorns had a duty to comply with Know Your Customer requirements as well as California law prior to allowing an individual using the name "Charles Treadway" to open and use an account.

34. Both Citibank and Acorns have refused Plaintiff's demand to return or reimburse the $203,930.26 that was stolen from the Trust Account.

## FIRST CAUSE OF ACTION
### (Negligence – Defendant Citibank)

35. Plaintiff incorporates the allegations above as though fully set forth herein.

36. Citibank owed various duties to Plaintiff arising from the Trust Account.

37. Citibank owed a duty to ensure that no access was granted to the Trust Account by any unauthorized persons.

38. Citibank was further on notice that the Trust Account was a fiduciary account, and therefore itself owed duties to protect and preserve the account's assets from unauthorized withdrawal.

39. Citibank breached its duties by allowing one or more unauthorized individuals to have access to the Trust Account, in order to link the Trust Account to the investment account at Acorns.

40. Citibank further breached its duties by allowing one or more unauthorized individuals to withdraw funds from the Trust Account via unusual, fraudulent activity in the Trust Account over a seven-month span, without investigation and without proper notice to Plaintiff.

41. Citibank acted negligently in failing to detect the fraudulent activity in the Trust Account, failing to verify the transactions with Plaintiff, and failing to notify Plaintiff of the fraudulent activity in a timely manner.

42. As a direct and proximate result of Citibank's negligence, Plaintiff did not become aware of and was deprived of an opportunity to dispute the fraud until May 2024.

43. Citibank thereafter refused to credit more than $200,000 that was stolen from the Trust Account.

44. Plaintiff has been injured by Citibank's negligence, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**(Breach of Fiduciary Duty – Defendant Citibank)**

45. Plaintiff incorporates the allegations above as though fully set forth herein.

46. Citibank was aware that the Trust Account was a fiduciary account being maintained for the benefit of a minor, protected person.

47. Citibank was the custodian of the funds for the Trust.

48. Citibank owed additional fiduciary duties to Plaintiff to secure and protect the assets in the Trust Account.

49. Citibank owed a duty to ensure that no access was granted to the Trust Account by any unauthorized persons.

50. Citibank breached its duties by allowing one or more unauthorized individuals to have access to the Trust Account, in order to link the Trust Account to an investment account at Acorns.

51. Citibank further breached its duties by allowing one or more unauthorized individuals to withdraw funds from the Trust Account via unusual, fraudulent activity in the Trust Account over a seven-month span, without investigation and without proper notice to Plaintiff.

52. Citibank breached its duties in failing to detect the fraudulent activity in the Trust Account, failing to verify the transactions with Plaintiff, and failing to notify Plaintiff of the fraudulent activity in a timely manner.

53. As a direct and proximate result of Citibank's breach, Plaintiff did not become aware of and was deprived of an opportunity to dispute the fraud until May 2024.

54. Citibank thereafter refused to credit more than $200,000 that was stolen from the Trust Account.

55. Plaintiff has been injured by Citibank's breaches, in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**(Civil Theft, Cal. Penal Code § 496 – against Defendant Acorns)**

56. Plaintiff incorporates the allegations above as though fully set forth herein.

57. Acorns received money that had been stolen from the Trust Account by an unknown actor using the name "Charles Treadway."

58. Such money was transferred to an Acorns account without authorization and under circumstances constituting theft.

59. Acorns knew or should have known that the transfers were initiated by an unauthorized individual using the name "Charles Treadway."

60. Upon information and belief, Acorns failed and/or refused to perform necessary investigation of the identity of "Charles Treadway," including investigation to confirm that he was authorized to access the Trust Account.

61. Acorns knew or should have known that the funds transferred from the Trust Account to an account maintained and controlled by Acorns in the name of "Charles Treadway" were stolen or otherwise obtained in a manner constituting theft.

62. Plaintiff has suffered damages as a result of Acorn's conduct.

63. As a direct and proximate result of Acorn's civil theft, Plaintiff is entitled to an award of three times the actual damages in an amount to be shown at trial, as well as reasonable attorneys' fees and costs pursuant to Section 496(c) of the California Penal Code.

## FOURTH CAUSE OF ACTION
### (Conversion – against Defendant Acorns)

64. Plaintiff incorporates the allegations above as though fully set forth herein.

65. As Trustee, Plaintiff had ownership and the right to possession of the funds held in the Trust Account for the benefit of the Trust.

66. Acorns has exercised dominion and control over money rightfully belonging to the Trust Account in a manner that has interfered and is inconsistent with Plaintiff's ownership and right to possession.

67. Acorns' control of the Trust Assets has been without Siess's or the Trust's authorization.

68. Acorns knows or should know that Plaintiff has made multiple demands for the return of the Trust's money.

69. Acorns has ignored and refused Plaintiff's demands and failed to return the money.

70. Plaintiff has suffered damages related to Acorns' conversion of the trust property in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**(Restitution from Transferee Based on Unjust Enrichment – against Defendant Acorns)**

71. Plaintiff incorporates the allegations above as though fully set forth herein

72. Acorns received money from the Trust Account controlled by Plaintiff, which, in equity and good conscience, should be paid over and returned to Plaintiff.

73. Acorns received more than $300,000 through an account in the name of "Charles Treadway."

74. Acorns did not properly investigate "Charles Treadway" to confirm his identity and authorization to transact business.

75. Acorns knew or had reason to know that Charles Treadway did not have authorization to transact business upon the Trust Account, or to withdraw money from the Trust Account.

76. Upon information and belief, Acorns still retains or has credited the remaining $203,930.26 of money received from the Trust Account.

77. Based upon these circumstances, Plaintiff has suffered damages in the amount of $203,930.26.

WHEREFORE, Plaintiff Rachel Siess, as trustee of The Linden C. Siess Irrevocable Trust dated December 20, 2007, respectfully requests that this Court enter judgment in favor of Plaintiff as follows:

    A. Damages in an amount to be proved at trial;

      B.    Alternatively and additionally, equitable relief to avoid unjust enrichment;

      C.    Treble or punitive damages to the extent allowed by law;

      D.    Attorneys' fees to the extent permitted by law or contract; and

      E.    Statutory interest.

Dated: January 15, 2026

                                          FOSTER GRAHAM MILSTEIN & CALISHER, LLP

                                          */s/ Daniel K. Calisher*
                                          Daniel K. Calisher
                                          *Attorneys for Plaintiff*

Plaintiff's Address:
6112 Long Branch Dr.
Parker, Colorado 80134